

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY
FIRST CLASS MAIL POSTAGE PREPAID, TO ALL COUNSEL Pet Pioner
(OR PARTIES) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF
RECORD IN THIS ACTION ON THIS DATE.

DATED: _____11·5·12_____

DEPUTY CLERK



O

FILED - SOUTHERN DIVISION
CLERK, U.S. DISTRICT COURT

NOV - 5 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

RICHARD LEWIS TURNER,

                Petitioner,

            vs.

M. STAINER, Acting Warden,

               Respondent.

Case No. CV 11-7259-JPR

MEMORANDUM OPINION AND ORDER
DENYING PETITION AND DISMISSING
ACTION WITH PREJUDICE

### PROCEEDINGS

On September 1, 2011, Petitioner filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254, raising three claims for relief, one of which he later voluntarily dismissed. On July 31, 2012, Respondent filed an Answer with an attached memorandum. Petitioner did not file a reply. The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons discussed below, the Court denies the Petition and dismisses this action with prejudice.

### BACKGROUND

Petitioner was imprisoned after pleading guilty to an

1

unspecified offense in 1979 and was released on parole on October 14, 2009. (Pet. Attach. F at 1, 3.) The special conditions of his parole included the requirements that he register as a sex offender under California Penal Code section 290.011 and that he not possess or have access to children's clothing. (Lodged Doc. 3, Ex. E at 2-3.) On March 5, 2010, Petitioner was arrested at his wife's residence for violating those two conditions. (Pet. Attach. F at 2.) On April 20, 2010, Petitioner received a nine-month prison term for violating his parole. (Pet. "Attached Sheet #3.")

On July 27, 2010, Petitioner pleaded guilty to failing to register as a transient sex offender (Cal. Penal Code § 290.011(b)) and was sentenced to 44 months in prison. (Pet. at 2; Lodged Docs. 1-2.) He did not file a direct appeal. (Pet. at 2-3 (noting that his filing in the court of appeal was a "petition for writ of habeas corpus").)

On December 17, 2010, Petitioner constructively filed a habeas petition in Los Angeles County Superior Court, claiming that California Penal Code section 290.011 was impermissibly applied to him retroactively because it was not in effect when he pleaded guilty, in 1979, and that he had been impermissibly denied mental health treatment while on parole, which had caused him to violate the terms of his parole. (Oct. 24, 2012 Lodged Doc.) On February 24, 2011, before the earlier petition had been ruled on, Petitioner constructively filed two more habeas petitions in Los Angeles County Superior Court. (Lodged Docs. 3 & 5.) The first claimed that "Petitioner was denied his rights to participate in [] parole outpatient clinic services under

1  California Code of Reg[u]lations, Title 15, Division 3, Article
2  9, Section 3610(a)" (Lodged Doc. 3, Attach. at 8) and that
3  Petitioner's counsel was constitutionally ineffective in failing
4  to adequately investigate potentially mitigating circumstances
5  regarding Petitioner's potential sentence before advising him to
6  plead guilty (id. at 9).[1]  The second February 24, 2011 petition
7  was substantially similar.  (See Lodged Doc. 5.)  On March 18,
8  2011, the superior court denied the December 2010 petition,
9  finding that even if certain parole conditions had been
10 unlawfully applied to Petitioner, they were "irrelevant to the
11 fact that petitioner failed to register his address with law
12 enforcement" and therefore did not undermine his conviction.
13 (Lodged Doc. 8, Attach. F at 6.)  On March 29, 2011, the court
14 denied the February 24, 2011 petitions for various reasons.
15 (Lodged Doc. 4.)  The court rejected petitioner's ineffective-
16 assistance-of-counsel claim on the merits.  (Id.)  One of
17 Petitioner's February 24 petitions was apparently forwarded to
18 the court again for decision (see Lodged Doc. 5 at 1 (showing
19 various file stamps indicating that it was received in the

---

[1]It appears that Petitioner may have earlier filed other
superior court habeas petitions, challenging various aspects of his
parole violations and his conviction for failure to register (see
Lodged Doc. 8, Attach. F at 5 (referencing February 8, 2011
petitions)); those petitions have not been lodged with the Court.
They were denied on March 29, 2011: the superior court found that
Petitioner's challenges to his parole conditions were moot because
he was no longer subject to them given that he had been
reincarcerated for a new offense; the court noted that "plea
bargains are 'deemed to incorporate and contemplate not only the
existing law but the reserve power of the state to amend the law or
enact additional laws for the public good and in pursuance of
public policy.'"  (Id.)

1  appellate division on February 28, filed on April 1, and received
2  in the "North District" on April 6)), and the court declined to
3  rule on it, instead ordering that the court's earlier denial be
4  re-sent to Petitioner.  (See Lodged Doc. 5 at 42.)

5       On April 11, 2011, Petitioner constructively filed a habeas
6  petition in the California Court of Appeal, raising claims
7  generally corresponding to grounds one and two of the federal
8  Petition.  (Lodged Doc. 6.)  That petition was summarily denied
9  on May 12, 2011.  (Lodged Doc. 7.)  On June 7, 2011, Petitioner
10 constructively filed a habeas petition raising the same claims in
11 the California Supreme Court, which summarily denied it on August
12 10, 2011.  (Lodged Docs. 8, 9.)

13      On September 1, 2011, Petitioner filed the instant Petition.
14 It alleged three grounds for relief: (1) Petitioner's counsel was
15 constitutionally ineffective in failing to adequately investigate
16 whether Petitioner's parole was revoked for having failed to
17 register as a sex offender before the statutory period for him to
18 re-register had expired (Pet. at 5 & "Attached Sheet #1"); (2)
19 Petitioner's due process rights were violated because his parole
20 was revoked for having failed to register as a sex offender
21 before the statutory period for him to re-register had expired
22 (Pet. at 5 & "Attached Sheet #2"); and (3) Petitioner was
23 punished twice for the same offense, thereby violating double
24 jeopardy, by having his parole revoked and a nine-month sentence
25 imposed and then being prosecuted criminally for the same
26 conduct, resulting in a 44-month sentence  (Pet. at 5-6 &
27 "Attached Sheet #3").  On April 18, 2012, after the Court issued
28 a Report and Recommendation recommending that the Petition be

4

1  dismissed without prejudice because it was not fully exhausted

2  unless within 21 days of the district judge's acceptance of the

3  Report and Recommendation Petitioner voluntarily dismissed ground

4  three, Petitioner requested that ground three be dismissed.  On

5  April 20, 2012, the Court granted Petitioner's request, dismissed

6  ground three of the Petition, vacated its Report and

7  Recommendation, and ordered Respondent to file an Answer to the

8  Petition.

## STANDARD OF REVIEW

10  Under 28 U.S.C. § 2254(d), as amended by AEDPA:

11  An application for a writ of habeas corpus on behalf of

12  a person in custody pursuant to the judgment of a State

13  court shall not be granted with respect to any claim that

14  was adjudicated on the merits in State court proceedings

15  unless the adjudication of the claim — (1) resulted in a

16  decision that was contrary to, or involved an

17  unreasonable application of, clearly established Federal

18  law, as determined by the Supreme Court of the United

19  States; or (2) resulted in a decision that was based on

20  an unreasonable determination of the facts in light of

21  the evidence presented in the State court proceeding.

22  Under AEDPA, the "clearly established Federal law" that

23  controls federal habeas review of state-court decisions consists

24  of holdings of Supreme Court cases "as of the time of the

25  relevant state-court decision."  Williams v. Taylor, 529 U.S.

26  362, 412, 120 S. Ct. 1495, 1523, 146 L. Ed. 2d 389 (2000).

27  Although a particular state-court decision may be both

28  "contrary to" and "an unreasonable application of" controlling

1   Supreme Court law, the two phrases have distinct meanings.  <u>Id.</u>

2   at 391, 413.  A state-court decision is "contrary to" clearly

3   established federal law if it either applies a rule that

4   contradicts governing Supreme Court law or reaches a result that

5   differs from the result the Supreme Court reached on "materially

6   indistinguishable" facts.  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S.

7   Ct. 362, 365, 154 L. Ed. 2d 263 (2002).  A state court need not

8   cite or even be aware of the controlling Supreme Court cases, "so

9   long as neither the reasoning nor the result of the state-court

10  decision contradicts them."  <u>Id.</u>

11      State-court decisions that are not "contrary to" Supreme

12  Court law may be set aside on federal habeas review only "if they

13  are not merely erroneous, but 'an <u>unreasonable</u> application' of

14  clearly established federal law, or based on 'an <u>unreasonable</u>

15  determination of the facts' (emphasis added)."  <u>Id.</u> at 11.  A

16  state-court decision that correctly identified the governing

17  legal rule may be rejected if it unreasonably applied the rule to

18  the facts of a particular case.  <u>Williams</u>, 529 U.S. at 406-08.

19  To obtain federal habeas relief for such an "unreasonable

20  application," however, a petitioner must show that the state

21  court's application of Supreme Court law was "objectively

22  unreasonable."  <u>Id.</u> at 409-10.  In other words, habeas relief is

23  warranted only if the state court's ruling was "so lacking in

24  justification that there was an error well understood and

25  comprehended in existing law beyond any possibility for

26  fairminded disagreement."  <u>Harrington v. Richter</u>, 562 U.S. ___,

27  131 S. Ct. 770, 786-87, 178 L. Ed. 2d 624 (2011).

28      Petitioner appears to have raised ground one, or some

6

1  semblance of it, in a habeas petition to the Los Angeles County

2  Superior Court, which denied it in a reasoned decision.   (Lodged

3  Docs. 3-5.)   He then raised it in subsequent petitions to the

4  court of appeal and supreme court, both of which summarily denied

5  it.   (Lodged Docs. 6-9.)   The Court "looks through" the state

6  supreme court's silent denial on habeas to the last reasoned

7  decision, in this case the superior court's decision, as the

8  basis for the state court's judgment and reviews Petitioner's

9  claim under the deferential AEDPA standard.   See Ylst v.

10 Nunnemaker, 501 U.S. 797, 803-04, 111 S. Ct. 2590, 2595, 115 L.

11 Ed. 2d 706 (1991) (holding that California Supreme Court, by its

12 silent denial of petition for review, presumably did not intend

13 to change court of appeal's analysis); Bonner v. Carey, 425 F.3d

14 1145, 1148 n.13 (9th Cir. 2005) (applying Ylst in state habeas

15 context).[2]

16     Petitioner raised ground two in habeas petitions to the

17 state court of appeal and supreme court; the petitions were

18 summarily denied.   (Lodged Docs. 6-9.)   Because no reasoned

19 state-court decision exists as to ground two, the Court conducts

20 an independent review of the record to determine whether the

21 state supreme court, in denying the claim, was objectively

22 unreasonable in applying controlling federal law.   See Haney v.

23

24     [2]The Court declines to adopt Respondent's position that the
25 "look through" doctrine applies only when the last reasoned
   decision on a claim imposed a procedural bar.   (See Answer at 4-5.)
26 Nothing in Ylst limits its holding to that context; indeed, it
   explicitly states, "Where there has been one reasoned state
27 judgment rejecting a federal claim, later unexplained orders
   upholding that judgment or rejecting the same claim rest upon the
28 same ground."   501 U.S. at 803.

1  Adams, 641 F.3d 1168, 1171 (9th Cir.) (holding that independent

2  review "is not de novo review of the constitutional issue, but

3  only a means to determine whether the state court decision is

4  objectively unreasonable" (internal quotation marks omitted)),

5  cert. denied, 132 S. Ct. 551 (2011); see also Richter, 131 S. Ct.

6  at 784, 786 (holding that "petitioner's burden still must be met

7  by showing there was no reasonable basis for the state court to

8  deny relief," and reviewing court "must determine what arguments

9  or theories supported or . . . could have supported[] the state

10  court's decision[,] and then it must ask whether it is possible

11  fairminded jurists could disagree that those arguments or

12  theories are inconsistent with the holding in a prior decision of

13  [the Supreme Court]").

**DISCUSSION**

15  I.  **Habeas relief is not warranted on Petitioner's ineffective-**

16      **assistance-of-counsel claim**

17  Petitioner asserts that his trial counsel was

18  constitutionally ineffective by "provid[ing] bad advice,"

19  advising him to plead guilty without "investigat[ing] into

20  potential mitigating evidence," and "fail[ing] to provide

21  substitute counsel."  (Pet. at 5, "Attached Sheet #1.")

22  Under Strickland v. Washington, 466 U.S. 668, 687, 104 S.

23  Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984), a petitioner claiming

24  ineffective assistance of counsel must show that counsel's

25  performance was deficient and that the deficient performance

26  prejudiced his defense.  "Deficient performance" means

27  unreasonable representation falling below professional norms

28  prevailing at the time of trial.  Id. at 688-89.  To show

8

1  deficient performance, the petitioner must overcome a "strong
2  presumption" that his lawyer "rendered adequate assistance and
3  made all significant decisions in the exercise of reasonable
4  professional judgment."  Id. at 690.  Further, the petitioner
5  "must identify the acts or omissions of counsel that are alleged
6  not to have been the result of reasonable professional judgment."
7  Id.  The initial court considering the claim must then "determine
8  whether, in light of all the circumstances, the identified acts
9  or omissions were outside the wide range of professionally
10 competent assistance."  Id.

11     The Supreme Court has recognized that "it is all too easy
12 for a court, examining counsel's defense after it has proved
13 unsuccessful, to conclude that a particular act or omission of
14 counsel was unreasonable."  Id. at 689.  Accordingly, to overturn
15 the strong presumption of adequate assistance, the petitioner
16 must demonstrate that the challenged action could not reasonably
17 be considered sound trial strategy under the circumstances of the
18 case.  Id.

19     To meet his burden of showing the distinctive kind of
20 "prejudice" required by Strickland, the petitioner must
21 affirmatively

22      show that there is a reasonable probability that, but for
23      counsel's unprofessional errors, the result of the
24      proceeding would have been different.  A reasonable
25      probability is a probability sufficient to undermine
26      confidence in the outcome.

27 Id. at 694; see also Richter, 131 S. Ct. at 791 ("In assessing
28 prejudice under Strickland, the question is not whether a court

9

1  can be certain counsel's performance had no effect on the outcome
2  or whether it is possible a reasonable doubt might have been
3  established if counsel acted differently."). A court deciding an
4  ineffective-assistance-of-counsel claim need not address both
5  components of the inquiry if the petitioner makes an insufficient
6  showing on one. Strickland, 466 U.S. at 697.

7      In Richter, the Supreme Court reiterated that AEDPA requires
8  an additional level of deference to a state-court decision
9  rejecting an ineffective-assistance-of-counsel claim:

10     The pivotal question is whether the state court's
11     application of the Strickland standard was unreasonable.
12     This is different from asking whether defense counsel's
13     performance fell below Strickland's standard.

14  131 S. Ct. at 785. The Supreme Court further explained,

15     Establishing that a state court's application of
16     Strickland was unreasonable under § 2254(d) is all the
17     more difficult. The standards created by Strickland and
18     § 2254(d) are both "highly deferential," . . . and when
19     the two apply in tandem, review is "doubly" so. The
20     Strickland standard is a general one, so the range of
21     reasonable applications is substantial. Federal habeas
22     courts must guard against the danger of equating
23     unreasonableness under Strickland with unreasonableness
24     under § 2254(d). When § 2254(d) applies, the question is
25     not whether counsel's actions were reasonable. The
26     question is whether there is any reasonable argument that
27     counsel satisfied Strickland's deferential standard.

28  Id. at 788 (citations omitted).

1    In general, when a criminal defendant pleads guilty to an

2  offense, he cannot later claim deprivations of constitutional

3  rights that occurred prior to the entry of his guilty plea. See

4  Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S. Ct. 1602, 1608,

5  36 L. Ed. 2d 235 (1973); see also Moran v. Godinez, 57 F.3d 690,

6  700 (9th Cir. 1994) (as amended) (foreclosing most preplea

7  ineffective-assistance-of-counsel claims), superseded by statute

8  on other grounds as recognized in McMurtrey v. Ryan, 539 F.3d

9  1112, 1119 (9th Cir. 2008).

10    The Supreme Court recently reaffirmed that when a petitioner

11  suffers prejudice because he rejected a plea based on his

12  lawyer's bad advice, he might be entitled to habeas relief. See

13  generally Lafler v. Cooper, 566 U.S. ___, 132 S. Ct. 1376, 182 L.

14  Ed. 2d 398 (2012). Here, of course, Petitioner accepted the plea

15  bargain he was offered, and therefore Lafler is not on point. In

16  any event, even assuming that the underlying principle of Lafler

17  applies here, Petitioner's claim fails on the merits because he

18  has not met his burden to show that his plea was not voluntary or

19  the state courts' application of the Strickland standard was

20  unreasonable.

21    The superior court denied Petitioner's claim as follows:

22        An ineffective assistance of counsel claim may be

23    denied when the record shows that the omission or error

24    resulted from an informed tactical choice within the

25    range of reasonable competence. Here the record is

26    devoid of any evidence that any of the tactical or

27    strategic decisions made by defense counsel resulted from

28    anything other than informed tactical choices within the

11

1  range  of  reasonable  competence.    (<u>People v. Bunyard</u>,
2  (1988) 45 Cal. 3d 1189).
3  (Lodged Doc. 4 at 1.)   The superior court's holding was not
4  objectively unreasonable.   In his federal Petition, Petitioner
5  fails to specifically identify what evidence his counsel should
6  have uncovered with further investigation and how it would have
7  been helpful to his case, what advice his counsel gave him and
8  how it was "bad," or in what regard his counsel failed to provide
9  "substitute counsel."   On the face of the Petition, Petitioner is
10  not entitled to habeas relief.   <u>See</u> <u>Greenway v. Schriro</u>, 653 F.3d
11  790, 804 (9th Cir. 2011) ("cursory and vague" claims of
12  ineffective assistance of counsel "cannot support habeas
13  relief").
14       Although Petitioner does not state that he incorporates the
15  arguments from his earlier state petitions into the federal
16  Petition, even if the Court construes the Petition liberally to
17  do so, <u>see</u> <u>Allen v. Calderon</u>, 408 F.3d 1150, 1153 (9th Cir. 2005)
18  (courts must "construe pro se habeas filings liberally"),
19  Petitioner is still not entitled to habeas relief.   In his
20  February 24, 2011 superior court petitions, Petitioner alleged
21  that his counsel was ineffective in failing to investigate "a set
22  up or a conspiracy by parole agent D. Champlin and . . . the POC
23  doctor Kurger" to deny him mental health counseling and
24  medication, which he alleges would have prevented him from
25  violating his parole conditions.   (Lodged Doc. 3, Mem. P. & A. at
26  6-10.)   But Petitioner did not provide any evidence of this
27  alleged conspiracy other than his conclusory allegations, nor did
28  he state how the parole office's failure to provide mental health

1   treatment undermined his conviction or sentence.  He does not

2   claim that because of his mental condition he didn't understand

3   that he had to re-register; rather, he argues that his particular

4   circumstances did not require re-registration.  And nothing in

5   section 290.011 provides for a different registration requirement

6   or a lesser sentence for transient sex offenders undergoing

7   mental health counseling.  See Cal. Penal Code § 290.011.  Thus,

8   it was not objectively unreasonable for the superior court to

9   conclude that Petitioner's counsel's advice to plead guilty was

10  an "informed tactical choice within the range of reasonable

11  competence."  (Lodged Doc. 4 at 1.)

12       In his court of appeal and supreme court habeas petitions,

13  Petitioner refined his arguments to allege that his counsel was

14  deficient in failing to investigate or present the defense that

15  he was not guilty because he had five days to register his new

16  address after moving to a new residence and had been staying at

17  his wife's house for only three days before he was arrested.

18  (Lodged Doc. 6, Mem. P. & A. at 2-11; Lodged Doc. 8, Mem. P. & A.

19  at 1-13.)  Petitioner conceded that he told his counsel this

20  information (see Lodged Doc. 6, Mem. P. & A. at 3); his counsel,

21  apparently fully aware of Petitioner's contentions, nonetheless

22  advised him to plead guilty.  Petitioner states that counsel told

23  him that "the possible consequences of taking this case to trial

24  . . . would more likely result in Petitioner receiving the

25  maximum term . . . and the maximum penalty for being a second

26  striker."  (Lodged Doc. 8, Mem. P. & A. at 3.)

27       It was not objectively unreasonable for the state courts to

28  conclude that Petitioner's counsel's actions constituted sound

13

1  trial strategy.  See Barrios v. Dexter, No. CV 08-6411-GHK (DTB),

2  2010 WL 935756, at *9 (C.D. Cal. Mar. 12, 2010) (counsel not

3  deficient in advising petitioner to plead guilty when

4  petitioner's purported defense "gave rise to no viable defense").

5  A finder of fact may not have believed Petitioner's story that he

6  was living at his wife's house for only three "working" days.

7  Petitioner admitted that he charged his Global Positioning System

8  ("GPS") tracking device and ate meals at his wife's house, and

9  that it was difficult for him to find other shelter.  (See Lodged

10  Doc. 6, Mem. P. & A. at 2, 4-6.)  Moreover, Petitioner's GPS

11  showed that "on several different dates" in the month leading up

12  to his arrest he spent more than 24 hours at a time at his wife's

13  house.  (See Lodged Doc. 8, Attach. A.)  Petitioner's medications

14  and mail were found in one of the home's bedrooms, along with

15  men's clothing.  (Id.)  Under the circumstances, it was

16  reasonable for his attorney to conclude that the judge or a jury

17  would not have found Petitioner's assertions to the contrary

18  credible (particularly given that Petitioner was a convicted sex

19  offender) and may well have sentenced him to a longer sentence

20  than the 44 months Petitioner received as a result of his guilty

21  plea.  Because the state courts' rejection of Petitioner's

22  ineffective-assistance claim was not objectively unreasonable,

23  Petitioner is not entitled to habeas relief.  See also Lambert v.

24  Blodgett, 393 F.3d 943, 982 (9th Cir. 2004) ("Courts have

25  generally rejected claims of ineffective assistance premised on a

26  failure to investigate where the . . . additional evidence was

27  unlikely to change the outcome at trial."); Jackson v. Calderon,

28  211 F.3d 1148, 1154-55 (9th Cir. 2000) (finding no prejudice from

14

1  counsel's alleged failure to investigate when petitioner did not
2  meet his burden to present evidence that investigation would have
3  revealed favorable evidence).

4  **II.  Habeas relief is not warranted on Petitioner's second claim**

5          Respondent construes ground two as a challenge to the
6  sentence Petitioner received for violating his parole conditions
7  and argues that such a claim is not cognizable because Petitioner
8  is currently in custody on a new criminal conviction, independent
9  of his parole revocation.  (See Answer at 9-10.)  If Respondent's
10  construction of Petitioner's claim is accurate, Respondent is
11  correct that Petitioner may not challenge a sentence on which he
12  is no longer in custody.  See Maleng v. Cook, 490 U.S. 488, 490-
13  91, 109 S. Ct. 1923, 1925, 104 L. Ed. 2d 540 (1989) (28 U.S.C.
14  § 2254(a) requires "that the habeas petitioner be in custody
15  under the conviction or sentence under attack at the time his
16  petition is filed" (internal quotation marks omitted)).  But as
17  the Court earlier noted in its Report and Recommendation
18  (see Docket No. 19 at 9-10), ground two may arguably be liberally
19  construed as a challenge to the sufficiency of the evidence
20  supporting Petitioner's criminal conviction for failure to
21  register, which appears to be how Petitioner framed this claim
22  before the California Supreme Court.  (See Lodged Doc. 8, Mem. P.
23  & A. at 7-10.)  That construction of the claim is consistent with
24  Petitioner's allegations as to ground one that his counsel was
25  ineffective for not making the very same arguments to challenge
26  his criminal conviction.  (See Pet. at 5, "Attached Sheet #1";
27  Lodged Doc. 8, Mem. P. & A. at 12.)

28          To the extent Petitioner's second claim can be construed as

15

1  challenging the sufficiency of the evidence to support his

2  failure-to-register conviction, however, it still fails because

3  he pleaded guilty to the offense and therefore cannot claim that

4  the prosecution's evidence was insufficient. (See Lodged Doc. 2

5  at 1-2 (noting that Petitioner "knowingly, understandingly, and

6  explicitly" waived rights and pleaded guilty)); Tollett, 411 U.S.

7  at 266-67; Hector v. Poulos, 648 F. Supp. 2d 1194, 1197 (C.D.

8  Cal. 2009) ("A defendant who pleads guilty is convicted and

9  sentenced according to his plea and not upon the evidence.");

10  Martin v. Dexter, No. EDCV 08-00693-DOC (MLG), 2008 WL 4381519,

11  at *7 (C.D. Cal. Sept. 23, 2008) ("By pleading guilty . . .

12  Petitioner effectively waived any claim that his constitutional

13  rights were violated as to pretrial matters, which includes a

14  challenge to the sufficiency of the evidence." (citing Tollett)).

15  Moreover, as outlined above, Petitioner has failed to show that

16  his counsel was constitutionally ineffective in advising him to

17  plead guilty or that his plea was not voluntary as a result.  As

18  previously recounted, the evidence against Petitioner was quite

19  strong.  See Lambert, 393 F.3d at 984 (counsel not ineffective

20  for failing to investigate and uncover potentially exculpatory

21  evidence before advising petitioner to plead guilty in part

22  because evidence of guilt was overwhelming).  Thus, on

23  independent review, the Court finds that the state courts'

24  rejection of this claim was not objectively unreasonable.

25

26

27

28

16

1

**ORDER**

2

IT THEREFORE IS ORDERED that Judgment be entered denying the

3 Petition and dismissing this action with prejudice.

4

5

6 DATED: November 5, 2012

JEAN ROSENBLUTH
7 U.S. MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17